IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:18-cv-374-RJC-DSC

NIKE USA INC., )
)
    **Plaintiff/Counterclaim Defendant,** )
)
v. )
)
WDP SOCCER INC. et. al., )
)
    **Defendants/Counterclaimants.** )
)
)

## MEMORANDUM AND RECOMMENDATION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's "Motion to Dismiss Defendants' Counterclaim" (document #20), "Motion to Dismiss Defendants' Amended Counterclaim" (document #23), and the parties' briefs and exhibits.

On August 1, 2018, this matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and these Motions are now ripe for the Court's consideration.

Defendants filed their "Amended Answer and Counterclaim …" on November 27, 2017 (document #22).

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 15(a)(1) grants a party the right to "amend its pleading once as a matter of course" if done within twenty-one days after serving the pleading, Fed. R. Civ. P. 15(a)(1)(A), or "if the pleading is one to which a responsive pleading is required," a party may amend once as a matter of course, provided that it does so within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). The Rule further provides that leave to amend shall be freely given "when justice so requires." Id.

Defendants filed their Amended Answer and Counterclaim as of right twenty-one days after receipt of Plaintiff's Motion to Dismiss.

It is well settled that an amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot. <u>Young v. City of Mount Ranier</u>, 238 F. 3d 567, 573 (4th Cir. 2001) (amended pleading renders original pleading of no effect); <u>Turner v. Kight</u>, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot motion to dismiss original complaint on grounds that amended complaint superseded original complaint).

Accordingly, Plaintiff's "Motion to Dismiss Defendants' Counterclaim" (document #20) is administratively <u>denied</u> as moot without prejudice.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Plaintiff's "Motion to Dismiss Defendants' Amended Counterclaim" (document #23) be <u>granted</u>, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the allegations of Defendants' Amended Counterclaim as true, on July 17, 2008, Plaintiff entered into a contract with Defendants to provide them a line of credit in exchange for their purchasing Plaintiff's products for sale at their retail store in Charlotte. While the parties were negotiating the contract, Defendants entered into a ten year lease at their retail location. Plaintiff was aware of the lease and knew that sales of its products constituted half of Defendants' total sales.

The individual Defendants are shareholders of the corporate Defendant.

Defendants sold Plaintiff's Nike Team Sales products to numerous college and university customers. On October 14, 2016, Plaintiff informed Defendants via email that it would no longer supply its products to them effective October 28, 2016. As a result of the termination, Defendants

were forced to cease operations at their retail store and vacate their lease with over a year and a half remaining on the term. Defendants attempted to return a portion of their inventory to Plaintiff. Plaintiff refused to accept it or otherwise reimburse Defendants. Plaintiff also began selling its products directly to Defendants' former customers. Defendants allege that Plaintiff intentionally "shut down" their business.

On September 6, 2017, Plaintiff filed its Complaint in Wake County Superior Court seeking to recover $89,943.00 owing on Defendants' line of credit.

On October 10, 2017, Defendants removed the action to the United States District Court for the Eastern District of North Carolina alleging diversity of citizenship jurisdiction. Removal has not been challenged and appears proper.

On November 27, 2017, Defendants filed an Amended Answer and Counterclaim alleging claims for breach of contract and unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practice Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1.

On December 7, 2017, Plaintiff filed its Motion to Dismiss Defendants' Amended Counterclaim.

On December 21, 2017, Defendants filed their Motion to Transfer Venue to the Western District of North Carolina.

On July 10, 2018, District Judge Malcolm J. Howard <u>granted</u> Defendants' Motion to Transfer Venue.

## II. <u>DISCUSSION</u>

A.  **Standard of Review**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard.  First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

## B.  Breach of Contract

Under North Carolina law, the elements of a breach of contract claim are "the (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Defendants allege that Plaintiff's "abrupt refusal to continue selling" its products to them breached their contract.

A contract "of indefinite duration is generally terminable-at-will." Bartolomeo v. St. Thomas, Inc., 889 F.2d 530, 533 (4th Cir. 1989) (affirming summary judgment on wrongful termination of contract and unfair and deceptive trade practices claims) (citing General Tire & Rubber Co. v. Dist., Inc., 253 N.C. 459, 117 S.E.2d 479 (1960)). In their brief, Defendants argue that they are entitled to the "distributorship" exception established in General Tire, 253 N.C. at 472, 117 S.E. 2d at 489. See "Defendants' Response …" at 1-3 (document #26).  When that "narrow exception" applies, "a distributor who has made substantial investments in his business is entitled to operate the distributorship for a 'reasonable time.'" Bartolomeo, 889 F.2d at 533 (citing General Tire, 253 N.C. at 472, 117 S.E.2d at 489.)

The distributorship at issue in <u>General Tire</u> was an exclusive relationship where the distributor agreed not only to buy the seller's products, but also to promote, maintain and repair them at its own expense.  The distributor had not recovered its initial expenses or otherwise had the opportunity to make a profit. The parties had "contemplated" the relationship continuing for at least two more years.    <u>Bartolomeo</u>, 889 F.2d at 533-34 (citing <u>General Tire</u>, 253 N.C. at 472, 117 S.E.2d at 489.)  By contrast, the distributorship at issue in <u>Bartolomeo</u> was terminable at will where the distributor had already recovered its "start-up outlays" and had a "fair opportunity" to make a profit, which is the "the essence of the <u>General Tire</u> rule." 889 F.2d at 534 (affirming dismissal of breach of contract claim and holding that to do otherwise "would virtually nullify the general rule of at-will termination and we do not believe that <u>General Tire</u> intended any such consequence. That sort of added protection against at-will termination, we believe, is still left under North Carolina law to the bargaining process.")

Applying those legal principles here, Defendants' breach of contract claim fails. Defendants have not alleged that the contract had a definite term or a notice of termination provision. Nor do they allege that they had an exclusive relationship with Plaintiff or that they failed to recover any initial expenses. Defendants have alleged that Plaintiff was aware that they had entered into a ten year lease prior to the contract, and that sales of Plaintiff's products constituted half of their total sales. These allegations are not sufficient to bring their contract within the "narrow exception" to the terminable at will doctrine.  Defendants sold Plaintiff's products for more than eight years. This was certainly an adequate period of time to recover its "start-up outlays" and a "fair opportunity" to make a profit, which is the "the essence of the <u>General Tire</u> rule." <u>Bartolomeo</u>, 889 F.2d at 534.

In short, the parties' contract was terminable at will. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion to Dismiss Defendants' breach of contract claim be granted.

### C. Unfair and Deceptive Trade Practices

N. C. Gen. Stat. § 75 1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." The issue of what constitutes an unfair or deceptive trade practice is a matter of law. See L.C. Williams Oil Company, Inc. v. Exxon Corp., 625 F.Supp. 477, 482 (M.D.N.C. 1985); Noble v., Hooters of Greenville LLC, 199 N.C. App. 163, 167, 681 S.E.2d 448, 452 (2009); Boyd v. Drum, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998).

To assert an actionable tort claim under the UDTPA, a claimant must prove: (1) an unfair or deceptive act, (2) in or affecting commerce, (3) which proximately caused injury to the claimant or his business. N.C. Gen. Stat. § 75-1.1; Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers ... [and] is deceptive if it has the capacity or tendency to deceive." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). See also Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans, 989 F.Supp.2d 471, 477 (E.D.N.C. 2013); McDonald Bros. v. Tinder Wholesale, LLC, 395 F. Supp. 2d 255, 269 (M.D.N.C. 2005); Carcano v. JBSS, LLC, 200 N.C.App. 162, 172, 684 S.E.2d 41, 50 (2009).

To prevail on an unfair and deceptive trade practices claim in the context of a contractual relationship, a party must allege "[e]gregious or aggravating circumstances" in addition to the underlying breach of contract. Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012); Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981); Bartolomeo, 889 F.2d at 535

("plaintiff must show substantial aggravating circumstances attending the breach [of contract] to recover under the [UDTPA]"). A mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA. Davis v. State Farm Life Ins. Co., 163 F.Supp.3d 299, 307-08 (E.D.N.C. 2016); Bartolomeo, 889 F.2d at 535-36 ( allegations insufficient to support UDTPA claim: "(1) delayed notice of a test marketing; (2) limited time to accept a settlement offer; (3) failure to deliver products on the day [Plaintiff] refused the offer; (4) tampering with some documents pertaining to changes in distribution methods; (5) delayed reimbursements; (6) failure to inform [Plaintiff] of some incentive bonuses; and (7) removal after [Plaintiff's] termination of some products from the shelves to which he had delivered them").[1]

The Fourth Circuit's holding in Bartolomeo is dispositive of Defendant's UDTPA claim as well. In addition to the seven factual allegations stated above, "the core of [Bartolomeo's] claim [was] that for a period of time [from sometime in May 1987 to July 21, 1987] he was 'deceived' about the status of his distributorship…. [a]nd he … prepare[d] a market analysis report for defendants which detailed some proprietary information about his business during this period." 889 F.2d at 535. These facts were insufficient to maintain a UDTPA claim. Id.

Defendants allege that Plaintiff engaged in unfair and deceptive trade practices by terminating their main source of supply and then selling directly to their former customers. In their brief, Defendants characterize Plaintiff's actions as a "scheme" to enter into contracts with their customers and "to force Defendants out of business." Defendants have not pled sufficient facts to support this claim. See "Defendants' Response …" at 4 (document #26).

---

[1] Although the Court noted that "Bartolomeo will of course have the opportunity to pursue these claims as breaches of contract," these were "pre-termination breaches of contract" that were not before the Court on appeal. Bartolomeo, 889 F.2d at 532, 536.

The parties' contract was terminable at will. The Counterclaim fails to state a breach of contract claim or "substantial aggravating circumstances" to support a UDTPA claim. For those reasons, the undersigned respectfully recommends that Plaintiff's Motion to Dismiss Defendants' UDTPA claim be granted.

### III. ORDER

**IT IS HEREBY ORDERED** that Plaintiff's "Motion to Dismiss Defendants' Counterclaim" (document #20) is administratively **DENIED** as moot without prejudice.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion to Dismiss Defendants' Amended Counterclaim" (document #23) be **GRANTED** and the Amended Counterclaim be **DISMISSED WITH PREJUDICE**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED**.

Signed: August 9, 2018

David S. Cayer
United States Magistrate Judge